# EXHIBIT 6

# TO DECLARATION OF DANIEL K. GREEN IN SUPPORT OF DEPOMED'S MOTIONS IN LIMINE

```
 1            IN THE UNITED STATES DISTRICT COURT
 2          IN AND FOR THE DISTRICT OF NEW JERSEY
        - - - - - - - - - - - - - - - - - - - -
 3    DEPOMED, INC.,              )
 4             Plaintiff,         )
           v.                     )  Civil Action No.
 5    ACTAVIS ELIZABETH LLC,  )  12-CV-01358 JAP (TJB)
 6    ACTAVIS, INC., INCEPTA )
 7    PHARMACEUTICALS CO.,       )
      LTD., and ABON             )
 8    PHARMACEUTICALS LLC,       )
 9             Defendants.        )
        - - - - - - - - - - - - - - - - - - - - -)
10    DEPOMED, INC.,              )
11             Plaintiff,         )
           v.                     )  Civil Action No.
12    ZYDUS PHARMACEUTICALS  )  12-CV-02813 JAP (TJB)
13    (USA), INC., and           )
14    CADILA HEALTHCARE           )
15    LIMITED D/B/A ZYDUS         )
16    CADILA,                     )
17             Defendants.        )
        - - - - - - - - - - - - - - - - - - - - -
18         VIDEOTAPED DEPOSITION OF DAVID R. FRIEND
19                 New York, New York
20               Friday, March 28, 2014
21
22    Reported by:
23    Eileen Mulvenna, CSR/RMR/CRR
24    JOB No. 1834253
25    PAGES 1 - 193
```

Page 1

```
 1                   March 28, 2014

 2                     8:31 a.m.

 3

 4            VIDEOTAPED DEPOSITION of

 5       DAVID R. FRIEND, taken by Plaintiffs, held at

 6       the offices of McDermott, Will & Emery, 340

 7       Madison Avenue, New York, New York, before

 8       Eileen Mulvenna, CSR/RMR/CRR, Certified

 9       Shorthand Reporter, Registered Merit Reporter,

10       Certified Realtime Reporter and Notary Public

11       of the State of New York.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 2

```
 1      APPEARANCES OF COUNSEL:

 2

 3      Attorneys for the Plaintiff, Depomed, Inc.:

 4

 5          McDERMOTT WILL & EMERY, LLP, of Counsel

 6          BY:  WILLIAM G. GAEDE, III, ESQ.

 7          275 Middlefield Road, Suite 100

 8          Menlo Park, California  94205

 9          wgaede@mwe.com

10

11      Attorneys for Defendants Incepta and Abon

12      and the Witness

13

14          AXINN VELTROP & HARKRIDER, LLP

15          BY:  CHAD A. LANDMON, ESQ.

16          90 State House Square

17          Hartford, Connecticut   06103

18          clandmon@axinn.com

19

20      ALSO PRESENT:

21

22          DEVERELL WRITE, VIDEOGRAPHER

23

24

25

                                        Page 3
```

```
 1                      STIPULATIONS

 2

 3          IT IS HEREBY STIPULATED AND AGREED,

 4     by and between the attorneys for the

 5     respective parties herein, that filing and

 6     sealing be and the same are hereby waived.

 7

 8          IT IS FURTHER STIPULATED AND AGREED

 9     that all objections, except as to the form of

10     the question, shall be reserved to the time

11     of the trial.

12

13          IT IS FURTHER STIPULATED AND AGREED

14     that the within deposition may be signed and

15     sworn to before any officer authorized to

16     administer an oath, with the same force and

17     effect as if signed and sworn to before the

18     officer before whom the within deposition was

19     taken.

20

21

22

23

24

25
```

Veritext National Deposition & Litigation Services
866 299-5127

| | | |
|---|---|---|
| 1 | there are insufficient data and other data | 09:27:45 |
| 2 | that I cite in my report that indicate that it | 09:27:50 |
| 3 | is unlikely the dosage forms are retained in | 09:27:56 |
| 4 | the stomach to the extent that is set forth by | 09:28:00 |
| 5 | the claims put forward by Depomed. | 09:28:02 |
| 6 | Q.    You used the term "several | 09:28:06 |
| 7 | hours."  What quantity of time were you | 09:28:08 |
| 8 | applying in making that assessment? | 09:28:12 |
| 9 | A.    I would say that probably | 09:28:20 |
| 10 | minimally four hours, up to eight or nine. | 09:28:26 |
| 11 | Q.    Okay.  Having looked at the data, | 09:28:46 |
| 12 | is it your opinion as an expert that an | 09:28:58 |
| 13 | Actavis ANDA product could not be retained for | 09:29:04 |
| 14 | four hours if administered to a patient in a | 09:29:08 |
| 15 | fed state? | 09:29:12 |
| 16 | A.    Okay.  You're asking is it | 09:29:20 |
| 17 | possible that an Actavis product could be | 09:29:22 |
| 18 | retained up to four hours? | 09:29:27 |
| 19 | Q.    (Nods head in the affirmative.) | 09:29:30 |
| 20 | A.    It's -- it's possible. | 09:29:35 |
| 21 | Q.    Now, paragraph 16, you provide a | 09:30:03 |
| 22 | second opinion that Actavis does not infringe | 09:30:08 |
| 23 | the four asserted claims of the '280 patent, | 09:30:11 |
| 24 | "because Depomed's experts failed to | 09:30:14 |
| 25 | demonstrate that the Actavis ANDA products | 09:30:17 |

Page 44

| | | |
|---|---|---|
| 1 | remain substantially intact until | 09:30:21 |
| 2 | substantially all of the gabapentin is | 09:30:24 |
| 3 | released." | 09:30:27 |
| 4 | Do you see that? | 09:30:28 |
| 5 | A.    Yes. | 09:30:29 |
| 6 | Q.    And do you have an independent | 09:30:29 |
| 7 | opinion on whether the Actavis ANDA products | 09:30:33 |
| 8 | do or do not remain substantially intact until | 09:30:37 |
| 9 | substantially all of the gabapentin is | 09:30:41 |
| 10 | released? | 09:30:43 |
| 11 | A.    Yes. | 09:30:45 |
| 12 | Q.    What is it? | 09:30:46 |
| 13 | A.    That there is measurable and, | 09:30:49 |
| 14 | depending on time, considerable loss of | 09:30:54 |
| 15 | polymer consistent with erosion of the matrix. | 09:30:57 |
| 16 | Q.    And so it's your opinion -- in | 09:31:06 |
| 17 | addition to, in your view, that Depomed's | 09:31:09 |
| 18 | experts have not demonstrated it, it is your | 09:31:13 |
| 19 | independent opinion that the dosage form does | 09:31:16 |
| 20 | not remain substantially intact until | 09:31:18 |
| 21 | substantially all the gabapentin is released? | 09:31:20 |
| 22 | A.    Yes. | 09:31:25 |
| 23 | Q.    Is there any reason why you | 09:31:30 |
| 24 | didn't expressly state that opinion in | 09:31:31 |
| 25 | paragraph 16? | 09:31:34 |

Page 45

| | | |
|---|---|---|
| 1 | accurate, yes. | 11:25:40 |
| 2 | Q.     And any part of that you would | 11:25:41 |
| 3 | disagree with? | 11:25:44 |
| 4 | A.     I would -- I don't disagree with | 11:25:48 |
| 5 | the statement, which I can barely see, | 11:25:55 |
| 6 | "proximal small bowel" because data support | 11:25:58 |
| 7 | uptake from the lower small bowel as well. | 11:26:03 |
| 8 | Q.     And when you understand the term | 11:26:09 |
| 9 | "small bowel," what do you understand those | 11:26:11 |
| 10 | parts of the small intestine to encompass? | 11:26:14 |
| 11 | A.     Essentially, from the -- just | 11:26:18 |
| 12 | past the pylorus to the ileocecal valve, the | 11:26:23 |
| 13 | entire small intestine. | 11:26:28 |
| 14 | Q.     Now, Doctor, in your report, | 11:27:22 |
| 15 | we've talked about the -- for the background, | 11:27:29 |
| 16 | the scientific background, Section 7.  And | 11:27:32 |
| 17 | then in Section 8, which we've discussed a | 11:27:36 |
| 18 | portion of, but we haven't discussed all of | 11:27:38 |
| 19 | it, you're discussing the asserted claims of | 11:27:40 |
| 20 | the '280 patent; correct? | 11:27:44 |
| 21 | A.     Correct. | 11:27:47 |
| 22 | Q.     Okay.  Now, in Section A at | 11:27:57 |
| 23 | page 17, you write, in the first sentence, | 11:28:03 |
| 24 | "The court construed 'is of a size exceeding | 11:28:11 |
| 25 | the pyloric diameter in the fed mode to | 11:28:16 |

Page 99

| | | |
|---|---|---|
| 1 | promote retention in the stomach during said | 11:28:20 |
| 2 | fed mode' of Claim 1 to mean 'such that when | 11:28:20 |
| 3 | the dosage form is introduced into the stomach | 11:28:26 |
| 4 | in the fed mode, the dosage form remains in | 11:28:28 |
| 5 | the stomach for several hours.'" | 11:28:31 |
| 6 | Is that accurate? | 11:28:34 |
| 7 | A.     Yes. | 11:28:38 |
| 8 | Q.     And what you're referring there | 11:28:39 |
| 9 | to is a specific claim term in the '280 | 11:28:42 |
| 10 | patent, Claim 1; correct? | 11:28:45 |
| 11 | A.     Correct. | 11:28:47 |
| 12 | Q.     And that claim term that the | 11:28:48 |
| 13 | court was construing is "of a size exceeding | 11:28:50 |
| 14 | the pyloric diameter in the fed mode to | 11:28:54 |
| 15 | promote retention in the stomach during said | 11:28:58 |
| 16 | fed mode"? | 11:29:02 |
| 17 | A.     Yes. | 11:29:05 |
| 18 | Q.     Now, you say -- you cite to "See | 11:29:10 |
| 19 | paragraph 33 above."  I'm pretty sure that's | 11:29:13 |
| 20 | going to be your claim construction section. | 11:29:18 |
| 21 | A.     Yes. | 11:29:22 |
| 22 | Q.     And there on page 10, you have | 11:29:23 |
| 23 | the same claim term language.  Next to '280, | 11:29:25 |
| 24 | the first quoted claim term language; correct? | 11:29:33 |
| 25 | A.     Yes. | 11:29:37 |

Page 100

| | | |
|---|---|---|
| 1 | Q.    And in the right-hand column, you | 11:29:38 |
| 2 | put forth the court's construction. | 11:29:40 |
| 3 | A.    Yes. | 11:29:44 |
| 4 | Q.    And your understanding, as an | 11:29:45 |
| 5 | expert, is that you are to apply that | 11:29:47 |
| 6 | construction of the court to the evidence; | 11:29:49 |
| 7 | correct? | 11:29:52 |
| 8 | A.    Yes. | 11:29:56 |
| 9 | Q.    And the court's construction is | 11:30:01 |
| 10 | as set forth right there on page 10 in the | 11:30:04 |
| 11 | right-hand column in the '280; correct? | 11:30:06 |
| 12 | A.    Yes. | 11:30:11 |
| 13 | Q.    And you, of course, read the | 11:30:19 |
| 14 | court's Markman opinion; correct? | 11:30:21 |
| 15 | A.    Yes. | 11:30:25 |
| 16 | MR. GAEDE:  And let me mark as | 11:30:31 |
| 17 | Exhibit 9 the court's Markman opinion. | 11:30:34 |
| 18 | THE REPORTER:  I think it's 10. | 11:30:41 |
| 19 | MR. GAEDE:  You're right.  Thank | 11:30:41 |
| 20 | you. | 11:30:42 |
| 21 | (Friend Exhibit 10, No Bates | 11:31:02 |
| 22 | numbers, Markman Opinion, marked for | 11:31:02 |
| 23 | identification.) | 11:31:02 |
| 24 | BY MR. GAEDE: | 11:31:02 |
| 25 | Q.    Do you recognize Exhibit 10? | 11:31:21 |

Page 101

| | | |
|---|---|---|
| 1 | A.      Yes. | 11:31:23 |
| 2 | Q.      Could you turn your attention, | 11:31:24 |
| 3 | please, to page 9 of the Markman order. | 11:31:25 |
| 4 | A.      Okay. | 11:31:34 |
| 5 | Q.      You see in the first paragraph | 11:31:35 |
| 6 | there at the top of the page, in the middle of | 11:31:37 |
| 7 | it, it makes reference to "Defendants, on the | 11:31:39 |
| 8 | other hand, seek the following construction: | 11:31:45 |
| 9 | 'Is of a size exceeding the pyloric diameter | 11:31:47 |
| 10 | in the fed mode such that when the dosage form | 11:31:54 |
| 11 | is introduced into the stomach in the fed | 11:31:56 |
| 12 | mode, the dosage form remains in the stomach | 11:31:58 |
| 13 | for the duration of drug delivery.'" | 11:32:01 |
| 14 |         Do you see that? | 11:32:06 |
| 15 | A.      Yes. | 11:32:08 |
| 16 | Q.      And the "defendants" -- by that | 11:32:09 |
| 17 | you understand is Actavis in part; correct? | 11:32:11 |
| 18 | A.      Yes. | 11:32:16 |
| 19 | Q.      And so you understood that the | 11:32:16 |
| 20 | defendants were proposing to the court that it | 11:32:18 |
| 21 | construe this limitation to include an element | 11:32:21 |
| 22 | of "a size exceeding the pyloric diameter in | 11:32:24 |
| 23 | the fed mode," didn't you? | 11:32:27 |
| 24 | A.      That would be my understanding, | 11:32:30 |
| 25 | yes. | 11:32:31 |

Page 102

| | | |
|---|---|---|
| 1 | Q.     And the court then, after that, | 11:32:33 |
| 2 | said, "For the reasons discussed above, the | 11:32:35 |
| 3 | court finds no reason to depart from its | 11:32:37 |
| 4 | earlier construction and adopts its | 11:32:40 |
| 5 | construction from the Sun Pharma case, supra." | 11:32:43 |
| 6 | Do you see that? | 11:32:49 |
| 7 | A.     Yes. | 11:32:49 |
| 8 | Q.     And what they adopted was -- is | 11:32:50 |
| 9 | the construction that is set forth in your | 11:32:51 |
| 10 | expert report at page 10, "such that when the | 11:32:57 |
| 11 | dosage form is introduced into the stomach in | 11:33:05 |
| 12 | the fed mode, the dosage form remains in the | 11:33:06 |
| 13 | stomach for several hours." | 11:33:09 |
| 14 | Correct? | 11:33:13 |
| 15 | A.     Correct. | 11:33:14 |
| 16 | Q.     Now, in your paragraph 42 of your | 11:33:16 |
| 17 | expert report, you write, "As the claim | 11:33:26 |
| 18 | language makes clear, however, this" -- | 11:33:38 |
| 19 | A.     Excuse me.  Where are you | 11:33:41 |
| 20 | reading? | 11:33:43 |
| 21 | Q.     I'm sorry, paragraph 42. | 11:33:43 |
| 22 | A.     Oh, paragraph 42.  I'm sorry. | 11:33:45 |
| 23 | I thought you meant page 42.  I'm sorry.  My | 11:33:47 |
| 24 | fault. | 11:33:50 |
| 25 | Q.     No problem. | 11:33:51 |

Page 103

| 1 | A. Okay. | 11:33:54 |
| 2 | Q. Okay. Now, in paragraph 42 after | 11:33:55 |
| 3 | you quote the court's construction -- | 11:34:01 |
| 4 | Are you there? | 11:34:06 |
| 5 | A. Almost. | 11:34:06 |
| 6 | Q. Sorry. Page 17. I should give | 11:34:07 |
| 7 | you the page reference. | 11:34:10 |
| 8 | A. That would be easier. Okay. | 11:34:11 |
| 9 | Q. Let's start over. | 11:34:14 |
| 10 | Paragraph 42 of your expert | 11:34:16 |
| 11 | report, second sentence, you write, "As the | 11:34:18 |
| 12 | claim language makes clear, however, this must | 11:34:22 |
| 13 | be due to the dosage form being of a size that | 11:34:26 |
| 14 | is larger than the pyloric diameter in the fed | 11:34:28 |
| 15 | mode." | 11:34:31 |
| 16 | Do you see that? | 11:34:32 |
| 17 | A. Yes. | 11:34:33 |
| 18 | Q. That's not in the court's | 11:34:34 |
| 19 | construction, is it? | 11:34:43 |
| 20 | A. Not word-for-word, no. | 11:34:45 |
| 21 | Q. And, in fact, the defendants | 11:34:46 |
| 22 | provided that specific element of the dosage | 11:34:49 |
| 23 | form being of a size that is larger than the | 11:34:53 |
| 24 | pyloric diameter, and you noted that the court | 11:34:56 |
| 25 | did not accept that in the construction of | 11:34:59 |

Page 104

| | | |
|---|---|---|
| 1 | this element; correct? | 11:35:01 |
| 2 | A.     Yes. | 11:35:06 |
| 3 | Q.     Nonetheless, you applied in your | 11:35:09 |
| 4 | analysis a requirement that the dosage form be | 11:35:13 |
| 5 | of a size that is larger than the pyloric | 11:35:20 |
| 6 | diameter in the fed mode; correct? | 11:35:23 |
| 7 | A.     Correct. | 11:35:26 |
| 8 | Q.     Doctor, when the stomach -- the | 11:35:31 |
| 9 | peristaltic wave moves through the stomach and | 11:35:36 |
| 10 | there's food in the stomach and the pylorus | 11:35:39 |
| 11 | clenches, what's the diameter of it? | 11:35:45 |
| 12 | A.     It can be variable. | 11:35:48 |
| 13 | Q.     What is it? | 11:35:49 |
| 14 | A.     I took that size to be about 12 | 11:35:52 |
| 15 | or 13 millimeters in diameter on average. | 11:36:04 |
| 16 | Q.     That's when the pylorus is | 11:36:07 |
| 17 | clenched? | 11:36:09 |
| 18 | A.     No, I didn't consider clenching | 11:36:15 |
| 19 | versus unclenching. | 11:36:19 |
| 20 | Q.     And you're aware, though, that in | 11:36:21 |
| 21 | the digestive process of the stomach, as food | 11:36:22 |
| 22 | is pushed by the peristaltic waves against the | 11:36:25 |
| 23 | pylorus, it is clenched? | 11:36:29 |
| 24 | A.     For a short period of time | 11:36:36 |
| 25 | possibly, yes. | 11:36:38 |

Page 105

```
 1        Q.     We looked at articles that say       11:36:39

 2   that; right, Doctor?                             11:36:41

 3        A.     Yes.                                 11:36:42

 4        Q.     And you didn't consider what the     11:36:43

 5   diameter was of the pylorus in the fed state     11:36:45

 6   when it is clenched; correct?                    11:36:50

 7        A.     No.                                  11:36:55

 8        Q.     And nothing in the court's           11:37:02

 9   construction says that it is the diameter of     11:37:04

10   the pylorus in a resting state, is it?           11:37:07

11        A.     It doesn't say so specifically,      11:37:17

12   no.                                              11:37:19

13        Q.     Okay.  Now, you've adopted a         11:37:22

14   general notion reflected in Dr. Annunziata's     11:37:29

15   report that the size of a fully relaxed          11:37:33

16   pylorus is 12.8 millimeters plus or minus 7      11:37:40

17   millimeters depending upon the individual;       11:37:43

18   correct?                                         11:37:49

19        A.     In the fed state, yes.               11:37:50

20        Q.     And you write in your report, at     11:38:02

21   paragraph 45, "Depomed's experts state that      11:38:04

22   the size of the pylorus during the fed mode is   11:38:08

23   12.8 millimeters plus or minus 7 millimeters."   11:38:11

24        And you cite Dr. Annunziata's               11:38:18

25   report at paragraph 45.                          11:38:20
```

Page 106

| | | |
|---|---|---|
| 1 | A.      Probably not as well as you | 12:04:38 |
| 2 | could. | 12:04:42 |
| 3 | Q.      Is it fair to say you relied upon | 12:04:44 |
| 4 | the lawyers for this description in | 12:04:45 |
| 5 | paragraph 59? | 12:04:47 |
| 6 | A.      In this particular case, yes. | 12:04:51 |
| 7 | Q.      Okay.  This is really a legal | 12:04:54 |
| 8 | argument, isn't it, sir, as you read it? | 12:05:01 |
| 9 | MR. LANDMON:  Objection; vague | 12:05:05 |
| 10 | and ambiguous. | 12:05:06 |
| 11 | THE WITNESS:  I'm not a lawyer so | 12:05:07 |
| 12 | I can't give you an opinion about its | 12:05:08 |
| 13 | being a legal argument. | 12:05:12 |
| 14 | BY MR. GAEDE: | 12:05:16 |
| 15 | Q.      Can you point to me the | 12:05:16 |
| 16 | scientific opinion in paragraph 59? | 12:05:17 |
| 17 | (Witness peruses the exhibit.) | 12:05:35 |
| 18 | A.      I don't see a scientific opinion, | 12:05:39 |
| 19 | no. | 12:05:41 |
| 20 | Q.      Now, if we could turn your | 12:05:49 |
| 21 | attention to page 27 and 28 of your expert | 12:05:51 |
| 22 | report. | 12:05:58 |
| 23 | A.      Okay. | 12:06:03 |
| 24 | Q.      Now, here in paragraph 60 of your | 12:06:07 |
| 25 | report, you applied the construction to | 12:06:13 |

Page 123

| | | |
|---|---|---|
| 1 | "release of substantially all of said drug | 12:06:17 |
| 2 | after such immersion" to mean "at least | 12:06:21 |
| 3 | 80 percent of the drug has been released after | 12:06:24 |
| 4 | eight hours of immersion in gastric fluid." | 12:06:26 |
| 5 | Do you see that? | 12:06:30 |
| 6 | A.    Yes. | 12:06:31 |
| 7 | Q.    And that's the test that you | 12:06:32 |
| 8 | apply in assessing whether the Actavis | 12:06:34 |
| 9 | 600 milligram product releases substantially | 12:06:38 |
| 10 | all of the gabapentin from the dosage form at | 12:06:42 |
| 11 | eight or ten hours; correct? | 12:06:45 |
| 12 | A.    Correct. | 12:06:50 |
| 13 | Q.    And when you applied eight hours | 12:06:54 |
| 14 | for Claim 1, do you see that limitation in | 12:06:58 |
| 15 | Claim 1? | 12:07:00 |
| 16 | (Witness peruses the exhibit.) | 12:07:17 |
| 17 | A.    No. | 12:07:25 |
| 18 | Q.    And you have some patents, don't | 12:07:27 |
| 19 | you, sir? | 12:07:30 |
| 20 | A.    Yes. | 12:07:31 |
| 21 | Q.    So you've read patents before? | 12:07:31 |
| 22 | A.    Yes. | 12:07:34 |
| 23 | Q.    And you understand that we're | 12:07:34 |
| 24 | looking at claims; right? | 12:07:35 |
| 25 | A.    Yes. | 12:07:38 |

Page 124

| | | |
|---|---|---|
| 1 | Q.     And you understand the concept of | 12:07:39 |
| 2 | an independent or dependent claim? | 12:07:40 |
| 3 | A.     I do. | 12:07:43 |
| 4 | Q.     Could you turn your attention to | 12:07:44 |
| 5 | Claim 46 of the '280 patent. | 12:07:47 |
| 6 | A.     Okay. | 12:07:59 |
| 7 | Q.     And would you read Claim 46 into | 12:08:02 |
| 8 | the record, please. | 12:08:05 |
| 9 | A.     "A dosage form in accordance with | 12:08:06 |
| 10 | Claim 1 in which said dosage form releases | 12:08:09 |
| 11 | substantially all of said drug within about | 12:08:12 |
| 12 | eight hours after immersion in gastric fluid." | 12:08:14 |
| 13 | Q.     There we have an eight-hour | 12:08:18 |
| 14 | limitation in Claim 46, don't we? | 12:08:20 |
| 15 | A.     Correct. | 12:08:23 |
| 16 | Q.     But we don't in Claim 1, do we? | 12:08:24 |
| 17 | A.     Not explicitly, no. | 12:08:29 |
| 18 | Q.     And in the middle of paragraph 60 | 12:08:38 |
| 19 | of your expert report, you make reference to | 12:08:40 |
| 20 | "Notably in that case, the court construed a | 12:08:46 |
| 21 | very similar claim term in the '280 patent, | 12:08:51 |
| 22 | 'while releasing substantially all of said | 12:08:53 |
| 23 | drug within said stomach where said drug is | 12:08:58 |
| 24 | maintained in an acidic environment' to mean | 12:09:00 |
| 25 | 'at least 80 percent of the drug has been | 12:09:04 |

Page 125

| | | |
|---|---|---|
| 1 | released after eight hours of immersion in | 12:09:08 |
| 2 | gastric fluid.'" | 12:09:11 |
| 3 | A.    Yes. | 12:09:15 |
| 4 | Q.    It's not the same claim as | 12:09:16 |
| 5 | Claim 1, is it? | 12:09:17 |
| 6 | A.    I believe in this particular | 12:09:23 |
| 7 | case, I was relying on the agreed-upon | 12:09:24 |
| 8 | definition of -- or interpretation of that | 12:09:27 |
| 9 | element. | 12:09:30 |
| 10 | MR. GAEDE:  Why don't we go off | 12:09:51 |
| 11 | the record for a second. | 12:09:52 |
| 12 | THE VIDEOGRAPHER:  The time on | 12:09:55 |
| 13 | the video monitor is 12:10 p.m.  We're | 12:09:56 |
| 14 | off the record. | 12:09:58 |
| 15 | (Luncheon recess from the | 12:10:08 |
| 16 | record.) | 12:10:08 |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

Page 126

| | | |
|---|---|---|
| 1 | A F T E R N O O N   S E S S I O N | 12:52:11 |
| 2 | THE VIDEOGRAPHER:  We are back on | 12:54:34 |
| 3 | the record.  The time on the video | 12:54:34 |
| 4 | monitor is 12:54 p.m. | 12:54:36 |
| 5 | DAVID FRIEND, | 12:54:37 |
| 6 | having been previously sworn, resumed the | 12:54:37 |
| 7 | stand and testified further as follows: | 12:54:37 |
| 8 | EXAMINATION (Cont'd.) | 12:54:37 |
| 9 | BY MR. GAEDE: | 12:52:11 |
| 10 | Q.    Doctor, having had a chance to | 12:54:40 |
| 11 | think about any of your answers from this | 12:54:41 |
| 12 | morning, do you wish to change any of them? | 12:54:43 |
| 13 | A.    Not at this point. | 12:54:46 |
| 14 | Q.    Doctor, we were talking about the | 12:54:56 |
| 15 | dissolution -- | 12:55:00 |
| 16 | A.    Right. | 12:55:01 |
| 17 | Q.    -- criteria with respect to the | 12:55:01 |
| 18 | '280 patent that is discussed at pages 27 and | 12:55:05 |
| 19 | 28 of your expert report. | 12:55:08 |
| 20 | A.    Okay. | 12:55:15 |
| 21 | Q.    In paragraph 60, where you have | 12:55:15 |
| 22 | the requirement of the eight hours of | 12:55:19 |
| 23 | immersion in gastric fluid . . . | 12:55:22 |
| 24 | A.    The statement? | 12:55:29 |
| 25 | Q.    Yes.  The first sentence. | 12:55:31 |

Page 127

| 1 | A.      First sentence, yes. | 12:55:33 |
| 2 | Q.      And you reference paragraph 32 | 12:55:34 |
| 3 | above.  So if we go to paragraph 32 above in | 12:55:36 |
| 4 | your expert report, which is Exhibit 1 to your | 12:55:42 |
| 5 | deposition, there in paragraph 32 at page 8 -- | 12:55:44 |
| 6 | A.      Yes. | 12:55:59 |
| 7 | Q.      -- there is claim term language. | 12:55:59 |
| 8 | It says, "Releases substantially all of said | 12:56:01 |
| 9 | drug after such immersion." | 12:56:06 |
| 10 | A.      Yes. | 12:56:08 |
| 11 | Q.      And it refers to 61, correct, | 12:56:08 |
| 12 | term number? | 12:56:13 |
| 13 | A.      Yes. | 12:56:13 |
| 14 | Q.      And you and I both agree that in | 12:56:14 |
| 15 | Claim 1 of the '280 patent, there's no express | 12:56:18 |
| 16 | claim language that says at about -- about or | 12:56:21 |
| 17 | within eight hours; correct? | 12:56:24 |
| 18 | A.      Not in Claim 1. | 12:56:27 |
| 19 | Q.      And in 61 here and the document | 12:56:31 |
| 20 | you cite, which is Exhibit 11 to your expert | 12:56:37 |
| 21 | report -- if you need to confirm yourself on | 12:56:42 |
| 22 | that, that's at page 10.  It follows your | 12:56:44 |
| 23 | chart. | 12:56:47 |
| 24 | A.      Yes. | 12:56:51 |
| 25 | Q.      So let me mark as Exhibit 12 | 12:56:52 |

Page 128

| | | |
|---|---|---|
| 1 | Exhibit 11 to your expert report, which is the | 12:56:53 |
| 2 | revised joint claim construction and | 12:56:58 |
| 3 | prehearing statement, which is referenced and | 12:57:00 |
| 4 | attached to your expert report. | 12:57:05 |
| 5 | (Friend Exhibit 12, No Bates | |
| 6 | numbers, Exhibit 11 to expert report of | |
| 7 | David R. Friend, Ph.D., marked for | |
| 8 | identification.) | |
| 9 | (Witness peruses the exhibit.) | 12:57:21 |
| 10 | BY MR. GAEDE: | 12:57:21 |
| 11 | Q.    If you look there at Claim -- at | 12:57:34 |
| 12 | Item 61, the last page of Exhibit 12 to your | 12:57:35 |
| 13 | deposition. | 12:57:40 |
| 14 | A.    Okay. | 12:57:53 |
| 15 | Q.    You'll see Item 61? | 12:57:54 |
| 16 | A.    Yes. | 12:57:56 |
| 17 | Q.    And "Claim Term" underneath -- | 12:57:56 |
| 18 | above that? | 12:57:59 |
| 19 | MR. LANDMON:  Above it. | 12:58:00 |
| 20 | THE WITNESS:  Above it, yes. | 12:58:01 |
| 21 | Q.    And the claim term that appears | 12:58:01 |
| 22 | there in 61 says, "Releases substantially all | 12:58:03 |
| 23 | of said drug without [sic] about eight hours | 12:58:06 |
| 24 | of such immersion." | 12:58:09 |
| 25 | I think that should be "within." | 12:58:10 |

Page 129

| | | |
|---|---|---|
| 1 | A.    Yes, yes. | 12:58:11 |
| 2 | Q.    And in your expert report where | 12:58:14 |
| 3 | it has the claim term next to 61, "Releases | 12:58:18 |
| 4 | substantially all of said drug after such | 12:58:23 |
| 5 | immersion," that's not the same claim term, is | 12:58:25 |
| 6 | it? | 12:58:29 |
| 7 | A.    I chose to use the agreed claim | 12:58:31 |
| 8 | construction. | 12:58:35 |
| 9 | Q.    For the claim term "Releases | 12:58:37 |
| 10 | substantially all of said drug within about | 12:58:39 |
| 11 | eight hours after such immersion"; correct? | 12:58:42 |
| 12 | A.    Yes. | 12:58:45 |
| 13 | Q.    That came from a different | 12:58:45 |
| 14 | patent, didn't it? | 12:58:47 |
| 15 | A.    Excuse me? | 12:58:50 |
| 16 | Q.    That claim term comes from a | 12:58:52 |
| 17 | different patent, doesn't it? | 12:58:54 |
| 18 | A.    I can't say that it does or | 12:58:56 |
| 19 | doesn't without further review. | 12:58:58 |
| 20 | Q.    So, clearly, if the eight-hour | 12:59:02 |
| 21 | requirement is not in Claim 1 of the '280 | 12:59:05 |
| 22 | patent, your opinions on that claim with | 12:59:08 |
| 23 | respect to the dissolution element would | 12:59:12 |
| 24 | change; correct? | 12:59:15 |
| 25 | A.    Possibly. | 12:59:18 |

Page 130

| | | |
|---|---|---|
| 1 | Q.      You do agree that at least | 12:59:28 |
| 2 | 80 percent of the drug is shown to be released | 12:59:30 |
| 3 | from the dosage forms in the in vitro studies; | 12:59:35 |
| 4 | correct? | 12:59:38 |
| 5 | A.      You're saying that the in vitro | 12:59:41 |
| 6 | dissolution studies are carried out to at | 12:59:43 |
| 7 | least 80 percent of drug release? | 12:59:46 |
| 8 | Q.      Yes. | 12:59:48 |
| 9 | A.      Yes, I believe most of those | 12:59:50 |
| 10 | studies are. | 12:59:52 |
| 11 | MR. GAEDE:  Why don't we mark as | 13:00:22 |
| 12 | Exhibit 13 a document entitled, | 13:00:23 |
| 13 | "Quantitative Tablet Swelling Study In | 13:00:29 |
| 14 | Vitro Dissolution and Qualitative Tablet | 13:00:32 |
| 15 | Imaging Study of Gabapentin Tablets." | 13:00:36 |
| 16 | It's at DEPOACT0114326.1 through | 13:00:38 |
| 17 | DEPOACT0114350.1. | 13:00:46 |
| 18 | (Friend Exhibit 13, Bates Nos. | 13:00:53 |
| 19 | DEPOACT0114326.1 through | 13:00:53 |
| 20 | DEPOACT0114350.1., Quantitative Tablet | 13:00:53 |
| 21 | Swelling Study, marked for | 13:00:53 |
| 22 | identification.) | 13:00:53 |
| 23 | Q.      You've reviewed Exhibit 13 | 13:01:13 |
| 24 | before, sir? | 13:01:15 |
| 25 | A.      Yes. | 13:01:19 |

Page 131

```
1          Q.      And as reflected in page 9 and        13:01:28

2    page 11 of the report, the Actavis              13:01:33

3    300 milligram and 600 milligram tablets that    13:01:38

4    are the subject of this litigation certainly    13:01:41

5    release more than 80 percent of the gabapentin  13:01:44

6    that's contained in the dosage forms; correct?  13:01:48

7          A.      Yes.  In this particular           13:01:56

8    experiment, yes.                                13:01:58

9          Q.      And Actavis' own dissolution data  13:02:00

10   that is submitted to the FDA also shows that    13:02:03

11   both dosage forms release more than             13:02:06

12   80 percent; correct?                            13:02:08

13         A.      I believe so.                      13:02:13

14         Q.      Now, since we're on dissolution    13:02:15

15   studies, you also have an opinion here on       13:02:17

16   Claim 45 of the '280 patent and Claim 26 of     13:02:22

17   the '927 patent.  If you need to see that,      13:02:37

18   sir, it's at page 40 of your expert report.     13:02:40

19         A.      Page 40?                           13:02:43

20         Q.      Yes.                               13:02:44

21                 (Witness peruses the exhibit.)     13:02:45

22         A.      Okay.                              13:02:49

23         Q.      Now, before we go any further, do  13:02:51

24   you have the '280 patent in front of you, sir?  13:02:59

25         A.      Yes.                               13:03:12
```

Page 132

| | | |
|---|---|---|
| 1 | Q.     If you could turn to Claim 45, | 13:03:13 |
| 2 | please. | 13:03:15 |
| 3 | A.     Okay. | 13:03:20 |
| 4 | Q.     And that claim says, "A dosage | 13:03:22 |
| 5 | form in accordance with Claim 1 in which said | 13:03:25 |
| 6 | dosage form releases substantially all of said | 13:03:28 |
| 7 | drug within about ten hours after immersion in | 13:03:31 |
| 8 | gastric fluid." | 13:03:36 |
| 9 | Do you see that? | 13:03:37 |
| 10 | A.     Yes. | 13:03:38 |
| 11 | Q.     So it has the requirement of | 13:03:40 |
| 12 | within about ten hours; correct? | 13:03:42 |
| 13 | A.     Correct. | 13:03:46 |
| 14 | Q.     And that doesn't mean exactly ten | 13:03:46 |
| 15 | hours; correct? | 13:03:48 |
| 16 | A.     That would be my understanding. | 13:03:50 |
| 17 | Q.     Likewise, for Claim 26 in the | 13:03:54 |
| 18 | '927 patent, where, as reflected on page 40 of | 13:03:58 |
| 19 | your expert report, you quote it? | 13:04:05 |
| 20 | A.     Yes. | 13:04:09 |
| 21 | Q.     Claim 26 of the '92 [sic] patent | 13:04:10 |
| 22 | states, "The method of Claim 17 wherein the | 13:04:13 |
| 23 | dosage form provides administration of at | 13:04:15 |
| 24 | least 85 percent weight of the gabapentin to | 13:04:18 |
| 25 | be delivered over a period of about five to 12 | 13:04:20 |

Page 133

| | | | |
|---|---|---|---|
| 1 | | hours"; correct? | 13:04:23 |
| 2 | A. | Correct. | 13:04:25 |
| 3 | Q. | That doesn't require exactly at | 13:04:27 |
| 4 | | 12 hours; correct?  Or within -- | 13:04:29 |
| 5 | A. | Within 12 hours. | 13:04:39 |
| 6 | Q. | -- 12 hours. | 13:04:40 |
| 7 | A. | Yes. | 13:04:41 |
| 8 | Q. | Could be a little bit more; | 13:04:41 |
| 9 | | right? | 13:04:42 |
| 10 | A. | Very little more. | 13:04:44 |
| 11 | Q. | But it's not 12 hours or less; | 13:04:46 |
| 12 | | correct? | 13:04:48 |
| 13 | A. | That would be one interpretation. | 13:04:51 |
| 14 | Q. | Is that how you read the term "of | 13:04:54 |
| 15 | | about"? | 13:04:55 |
| 16 | | (Witness peruses the exhibit.) | 13:05:04 |
| 17 | A. | Okay.  So where does it say "of | 13:05:11 |
| 18 | | about"? | 13:05:13 |
| 19 | Q. | In Claim 26 of the '927 patent, | 13:05:14 |
| 20 | | page 40, where you quote it. | 13:05:19 |
| 21 | | (Witness peruses the exhibit.) | 13:05:29 |
| 22 | A. | I don't see an "of about." | 13:05:35 |
| 23 | Q. | Could I see your report. | 13:05:41 |
| 24 | A. | (Handing.) | 13:05:43 |
| 25 | Q. | It's in the quote -- | 13:05:49 |

Page 134

| | | | |
|---|---|---|---|
| 1 | A. | Oh, the quote. | 13:05:51 |
| 2 | Q. | Paragraph 98, "period of about" | 13:05:52 |
| 3 | (indicating). | | 13:05:58 |
| 4 | A. | Okay. | 13:05:59 |
| 5 | | (Witness peruses the exhibit.) | 13:06:00 |
| 6 | A. | "Of about," yes. | 13:06:01 |
| 7 | Q. | And, again, that doesn't mean | 13:06:05 |
| 8 | exactly at 12 or less, correct, by your | | 13:06:06 |
| 9 | understanding? | | 13:06:09 |
| 10 | A. | That could exceed somewhat or | 13:06:11 |
| 11 | slightly beyond 12 hours, I agree. | | 13:06:14 |
| 12 | Q. | Okay.  So let's take a look -- | 13:06:19 |
| 13 | since we have the ten-hour data and the | | 13:06:21 |
| 14 | 12-hour data, we can do both at the same time | | 13:06:24 |
| 15 | if you're okay with that. | | 13:06:27 |
| 16 | A. | Okay.  Yes. | 13:06:29 |
| 17 | Q. | So first of all, in Exhibit 13, | 13:06:42 |
| 18 | with respect to the ten-hour limitation in the | | 13:06:48 |
| 19 | '280 patent claim 45, we see clearly at page 9 | | 13:06:53 |
| 20 | for the 300 milligram Actavis tablet | | 13:07:03 |
| 21 | 80 percent is exceeded at ten hours; correct? | | 13:07:08 |
| 22 | A. | In this table, yes. | 13:07:19 |
| 23 | Q. | And also in the data that is for | 13:07:21 |
| 24 | the 600 milligram Actavis tablet on page 11 of | | 13:07:22 |
| 25 | Exhibit 13, at the ten-hour, it has the | | 13:07:30 |

Page 135

| | | |
|---|---|---|
| 1 | Q.      And there, in .1 HCl, we have | 13:15:34 |
| 2 | one, two, three, four, five, six, seven, | 13:15:39 |
| 3 | eight, nine, ten, 11, 12 -- hold on.  Let me | 13:15:42 |
| 4 | start over.  I think I got that wrong.  My | 13:15:59 |
| 5 | eyesight's fading.  Let me start over. | 13:16:01 |
| 6 | There at the 12-hour mark, we | 13:16:04 |
| 7 | have one, two, three, four, five, six, seven, | 13:16:06 |
| 8 | eight, nine, ten, 11 tablets are at 85 or | 13:16:08 |
| 9 | above; correct? | 13:16:17 |
| 10 | A.      Correct. | 13:16:19 |
| 11 | Q.      And as reflected there, in .1 | 13:16:23 |
| 12 | HCl, the average is 86 percent; correct? | 13:16:26 |
| 13 | A.      Yes. | 13:16:30 |
| 14 | Q.      And that exceeds the requirement, | 13:16:31 |
| 15 | even by your interpretation of Claim 26 of the | 13:16:33 |
| 16 | '927 patent, as having 85 percent or more | 13:16:37 |
| 17 | release at 12 hours; correct? | 13:16:40 |
| 18 | A.      Correct. | 13:16:44 |
| 19 | Q.      And, of course, as we discussed | 13:16:59 |
| 20 | with respect to the ten-hour, the 12-hour and | 13:17:01 |
| 21 | even the 14-hour data, at each time point, you | 13:17:03 |
| 22 | would expect there to be continued release of | 13:17:06 |
| 23 | the drug from the dosage form beyond that | 13:17:09 |
| 24 | point in time; correct? | 13:17:12 |
| 25 | A.      That would be my conclusion, yes. | 13:17:16 |

Page 141

| | | |
|---|---|---|
| 1 | Q.   Now, let's turn your attention to | 13:18:54 |
| 2 | your opinion on "substantially intact" with | 13:18:56 |
| 3 | respect to Claim 1 of the '280 patent | 13:19:00 |
| 4 | reflected at pages 29 and 30 of your expert | 13:19:03 |
| 5 | report. | 13:19:05 |
| 6 | A.   Okay. | 13:19:13 |
| 7 | Q.   Now, in paragraph 67, you write, | 13:19:20 |
| 8 | "The court construed 'remains substantially | 13:19:26 |
| 9 | intact' of Claim 1 to mean 'a polymeric matrix | 13:19:31 |
| 10 | in which the polymer portion substantially | 13:19:38 |
| 11 | retains its size and shape without | 13:19:39 |
| 12 | deterioration due to becoming solubilized in | 13:19:42 |
| 13 | the gastric fluid or due to breakage into | 13:19:45 |
| 14 | fragments or small particles.'" | 13:19:49 |
| 15 | Correct? | 13:19:54 |
| 16 | A.   Correct. | 13:19:54 |
| 17 | Q.   Now, do you read that | 13:19:55 |
| 18 | construction as preventing any erosion of any | 13:19:58 |
| 19 | of the polymers in the matrix? | 13:20:04 |
| 20 | A.   Any of the polymers? | 13:20:09 |
| 21 | Q.   Yes. | 13:20:11 |
| 22 | A.   I would read it as substantially | 13:20:14 |
| 23 | all of the polymers remain such that the | 13:20:17 |
| 24 | dosage form maintains its shape and size. | 13:20:22 |
| 25 | Q.   Until at least 80 percent of the | 13:20:27 |

Page 142

```
1    drug has been released?                        13:20:29

2         A.      Correct.                          13:20:30

3         Q.      And you would agree that there is 13:20:37

4    contemplation that ultimately there will be    13:20:40

5    dissolution of the polymers of the matrix --   13:20:43

6    of the polymeric matrix in the '280 patent;    13:20:44

7    correct?                                        13:20:48

8         A.      I would have to review the '280   13:20:51

9    patent to confirm that.                         13:20:53

10        Q.      You don't recall that?            13:20:55

11        A.      Not offhand, no.                  13:20:58

12        Q.      Do you have the '280 patent       13:21:09

13   there?  It's Exhibit 11 to your deposition, if 13:21:10

14   that helps on the exhibit number.              13:21:15

15        A.      Here it is, yes.                  13:21:17

16        Q.      Great.                            13:21:20

17               (Witness peruses the exhibit.)     13:21:21

18        Q.      Now, could you turn your          13:21:40

19   attention to Column 6 of the '280 patent.      13:22:00

20        A.      Yes.                              13:22:06

21        Q.      There at Column 6, line 10 --     13:22:08

22               Are you there?                     13:22:14

23        A.      Yes.                              13:22:14

24        Q.      -- it says, "The matrix itself is 13:22:14

25   solid prior to administration and, once        13:22:17
```

Page 143

```
 1    administered, remains undissolved in (i.e. is        13:22:19

 2    not eroded by) the gastric fluid for a period        13:22:24

 3    of time sufficient to permit a majority of the       13:22:27

 4    drug to be released by the solution diffusion        13:22:29

 5    process during the fed mode.  The                    13:22:32

 6    rate-limiting factor in the release of the           13:22:35

 7    drug is, therefore, controlled diffusion of          13:22:37

 8    the drug from the matrix rather than erosion,        13:22:39

 9    dissolving or chemical decomposition of the          13:22:42

10    matrix."                                             13:22:45

11         A.     Yes.                                     13:22:49

12         Q.     The rate-controlling mechanism of        13:22:53

13    release here in the Actavis tablets, what is         13:22:58

14    it?                                                  13:23:01

15               MR. LANDMON:  Objection; beyond           13:23:05

16         the scope of his expert report.                 13:23:06

17               THE WITNESS:  I don't have an             13:23:08

18         opinion per se.                                 13:23:09

19    BY MR. GAEDE:                                        13:23:11

20         Q.     Okay.  Would you turn your               13:23:11

21    attention, please, to Column 9 of the '280           13:23:28

22    patent.                                              13:23:31

23         A.     Okay.                                    13:23:36

24         Q.     There it -- it states, Column 9,         13:23:36

25    line 15, "The particle will then dissolve" --        13:23:40
```

Page 144

```
1     withdraw that.  Start over.                    13:23:47
2                Column 9, line 15, it says, "The    13:23:49
3     particles will then slowly dissolve or         13:23:52
4     decompose.  Complete dissolution or            13:23:53
5     decomposition may not occur until 24 hours or  13:23:55
6     more after the intended dosing period ceases,  13:23:59
7     although in most cases, complete dissolution   13:24:04
8     or decomposition will occur within ten to 24   13:24:07
9     hours after the dosing period."                13:24:10
10               Correct?                            13:24:13
11       A.      Correct.                            13:24:15
12       Q.      So as an expert, doesn't this       13:24:15
13    patent contemplate that there will be some     13:24:18
14    dissolution of the matrix -- of the matrix     13:24:21
15    polymers into the dissolution media while a    13:24:21
16    drug is being released?                        13:24:25
17       A.      I can't say what it would mean in   13:24:31
18    terms of what would happen under in vitro      13:24:36
19    dissolution test conditions.                   13:24:40
20       Q.      What do you mean you can't say      13:24:49
21    what it would mean in terms of what would      13:24:50
22    happen under in vitro dissolution test         13:24:52
23    conditions?                                    13:24:55
24       A.      I would mean that it's -- okay.     13:25:14
25    I -- can you ask the question prior to that    13:25:37
```

Page 145

```
 1    one again, please.                          13:25:39

 2         Q.      Sure.                          13:25:43

 3              As an expert, doesn't this patent 13:25:47

 4    contemplate that there will be some         13:25:50

 5    dissolution of the matrix polymers into the 13:25:51

 6    dissolution media while a drug is being     13:25:54

 7    released?                                   13:26:02

 8         A.      It's a possible interpretation -- 13:26:02

 9    or anticipation.                            13:26:03

10         Q.     And one of ordinary skill in the 13:26:12

11    art using -- someone like yourself using HPMC 13:26:14

12    and POLYOX would understand, at the initial 13:26:19

13    hydration, there would be some dissolution of 13:26:25

14    some of the polymers off the surface of the 13:26:28

15    polymeric matrix; correct?                  13:26:31

16         A.     Yes, but not an amount that could 13:26:32

17    be easily determined in a short period of   13:26:34

18    time.                                       13:26:36

19         Q.     And that's because, at that      13:26:37

20    initial hydration, then subsequent to that, a 13:26:41

21    gel will form; correct?                     13:26:44

22         A.     Yes.                            13:26:47

23         Q.     And then you would expect the    13:26:48

24    rate of dissolution of polymers off that gel 13:26:49

25    to slow over that initial rate of polymers   13:26:52
```

Page 146

| | | |
|---|---|---|
| 1 | dissolving off the initially hydrated dry | 13:26:56 |
| 2 | tablet; correct? | 13:26:59 |
| 3 | A.     It's possible. | 13:27:02 |
| 4 | Q.     And you have made no | 13:27:13 |
| 5 | determination whether the erosion that you | 13:27:15 |
| 6 | identify based on Dr. Park's report, i.e., | 13:27:21 |
| 7 | dissolution of certain polymers into the | 13:27:25 |
| 8 | media, affects the rate-controlling release | 13:27:28 |
| 9 | mechanism of the dosage form; correct? | 13:27:32 |
| 10 | A.     Can you restate that again. | 13:27:38 |
| 11 | Thank you. | 13:27:40 |
| 12 | Q.     You have made no determination | 13:27:40 |
| 13 | whether the erosion that you identify based on | 13:27:42 |
| 14 | Dr. Park's report, i.e., dissolution of | 13:27:47 |
| 15 | certain polymers into the media, affects the | 13:27:50 |
| 16 | rate-controlling release mechanism of the | 13:27:53 |
| 17 | dosage form; correct? | 13:27:56 |
| 18 | A.     I don't recall exactly, but | 13:28:00 |
| 19 | I believe that Dr. Park did not look at | 13:28:03 |
| 20 | dissolution of drug in those experiments.  So | 13:28:06 |
| 21 | I did not. | 13:28:11 |
| 22 | Q.     And you did not ask Dr. Park to | 13:28:42 |
| 23 | do so -- those experiments prior to rendering | 13:28:44 |
| 24 | your opinions; correct? | 13:28:47 |
| 25 | A.     Correct. | 13:28:49 |

Page 147

```
 1          Q.     And you have not performed that        13:28:50

 2     analysis; correct?                                 13:28:52

 3          A.     No.                                    13:28:53

 4          Q.     And you certainly had an               13:28:56

 5     opportunity to do so prior to submitting your      13:28:57

 6     expert report; correct?                            13:29:00

 7          A.     That would be what, correlating        13:29:06

 8     dissolution of drug with erosion, running the      13:29:08

 9     Park experiment?                                   13:29:11

10          Q.     You rely on some investigational       13:29:15

11     data generated by Dr. Park.  There's nothing       13:29:18

12     that prevented you from doing investigation,       13:29:20

13     either on your own or in connection with           13:29:23

14     Dr. Park, to assess whether the                    13:29:25

15     rate-controlling release mechanism of the          13:29:27

16     dosage form was affected by this polymer that      13:29:30

17     you noted has been dissolved into the media?       13:29:33

18          A.     I guess I would say there was          13:29:39

19     nothing to promote me to want to do that.          13:29:40

20          Q.     The good news, Doctor, I actually      13:30:32

21     cut down the amount of documents that people       13:30:33

22     want me to ask you questions about.                13:30:36

23          A.     Much appreciated.  Much                13:30:38

24     appreciated.                                       13:30:40

25          Q.     I'm actually trying on your            13:30:44
```

Page 148

```
 1        behalf.                                    13:30:46

 2                     (Pause from the record.)       13:30:46

 3           Q.    Okay.  Now, we agree, with         13:31:11

 4        respect to substantially intact, that that's 13:31:14

 5        measured at 80 percent release of the drug;  13:31:16

 6        correct?                                    13:31:18

 7           A.    Can you point out where that --    13:31:21

 8           Q.    Page 29, 30 of your expert         13:31:23

 9        report.                                     13:31:25

10                     (Witness peruses the exhibit.)  13:31:30

11           A.    Can you repeat the question.       13:31:35

12           Q.    We agree that we look at the       13:31:36

13        requirement of substantially intact when    13:31:39

14        80 percent of the drug is released; correct? 13:31:42

15           A.    Yes.                               13:31:46

16           Q.    Okay.                              13:31:46

17                 MR. GAEDE:  Let me mark as         13:31:56

18           Exhibit 15 the expert report of Aeri     13:32:00

19           Park dated March 19, 2014.              13:32:03

20                     (Friend Exhibit 15, No Bates   13:32:25

21           numbers, Expert report of Aeri Park,     13:32:25

22           Ph.D., marked for identification.)       13:32:25

23        BY MR. GAEDE:                               13:32:25

24           Q.    Doctor, you recognize Exhibit 15;  13:32:31

25        correct?                                    13:32:33
```

Page 149

```
 1          Q.     Now, you looked at Dr. Tesfu's        13:48:49

 2     methods in her report; correct?                   13:48:53

 3          A.     Yes.                                   13:48:57

 4          Q.     And what she has -- a process          13:48:58

 5     that she used and which -- she then took           13:49:00

 6     photographers of the dosage forms at various       13:49:03

 7     time points; correct?                              13:49:05

 8          A.     Correct.                               13:49:07

 9          Q.     And you don't provide any              13:49:08

10     criticism of those methods that she used to        13:49:11

11     gather that data, did you?                         13:49:15

12          A.     Specifically the pictures?             13:49:18

13          Q.     Yes.                                   13:49:20

14          A.     Ask that question one more time.       13:49:23

15     Thank you.                                         13:49:25

16          Q.     You don't provide any criticism        13:49:26

17     of those methods that she used to gather those     13:49:27

18     pictures, do you?                                  13:49:29

19          A.     No.                                    13:49:33

20          Q.     You agree, though, however, as         13:50:07

21     reflected in paragraph 73 of your expert           13:50:08

22     report -- in the second sentence, it says,         13:50:12

23     "The specification of the '280 patent explains     13:50:18

24     that 'the rate-limiting factor in the release      13:50:23

25     of the drug is therefore controlled diffusion      13:50:26
```

Page 163

```
 1          of the drug from the matrix rather than              13:50:29
 2          erosion, dissolving or chemical decomposition        13:50:31
 3          of the matrix.'"                                     13:50:34
 4                  Correct?                                     13:50:38
 5          A.      Correct.                                     13:50:40
 6          Q.      And you also understand that in              13:50:40
 7     the term "diffusion" as construed in -- by the            13:50:43
 8     court, it permits some erosion, don't you?                13:50:50
 9          A.      I would admit to a very limited              13:50:54
10     amount of erosion.                                        13:50:57
11          Q.      And you admit that the court's               13:51:03
12     construction, though, says that the                       13:51:04
13     rate-controlling release mechanism is                     13:51:06
14     primarily diffusion; correct?                             13:51:08
15          A.      Can you point me back to that                13:51:13
16     phrase?                                                   13:51:15
17          Q.      Sure.                                        13:51:15
18                  If you take a look at                        13:51:16
19     "Dissolution diffusion," page 8, Term No. 58              13:51:20
20     of the '280 patent.                                       13:51:26
21                  (Witness peruses the exhibit.)               13:51:30
22          A.      Sorry, where is it specifically?             13:51:49
23          Q.      Page 8?                                      13:51:51
24          A.      Page 8, yes.                                 13:51:52
25          Q.      "Dissolution diffusion" under                13:51:52
```

Page 164

| | | |
|---|---|---|
| 1 | Term No. 58 in the agreed construction. | 13:51:58 |
| 2 | A.    Oh, yes. | 13:52:02 |
| 3 | (Witness peruses the exhibit.) | 13:52:03 |
| 4 | A.    The question was again, please? | 13:52:05 |
| 5 | Q.    You agree that the court's | 13:52:07 |
| 6 | construction requires that the rate of release | 13:52:10 |
| 7 | is at a rate "primarily controlled by the rate | 13:52:12 |
| 8 | of diffusion"; correct? | 13:52:18 |
| 9 | A.    Correct. | 13:52:19 |
| 10 | Q.    Doesn't mean there can't be other | 13:52:20 |
| 11 | factors in effect; correct? | 13:52:22 |
| 12 | MR. LANDMON:  Objection. | 13:52:28 |
| 13 | I think it misconstrues the | 13:52:31 |
| 14 | construction, and that question's vague | 13:52:34 |
| 15 | and ambiguous. | 13:52:36 |
| 16 | THE WITNESS:  Can you ask me -- | 13:52:41 |
| 17 | BY MR. GAEDE: | 13:52:43 |
| 18 | Q.    Sure. | 13:52:43 |
| 19 | A.    -- the question again. | 13:52:44 |
| 20 | Q.    The rate of release doesn't have | 13:52:45 |
| 21 | to be absolutely controlled by the rate of | 13:52:47 |
| 22 | diffusion, it has to be primarily controlled | 13:52:50 |
| 23 | by the rate of diffusion; correct? | 13:52:52 |
| 24 | A.    In reading these words, yes. | 13:52:58 |
| 25 | Q.    And you would agree that some | 13:53:03 |

Page 165

| | | |
|---|---|---|
| 1 | erosion is contemplated in the patent, | 13:53:04 |
| 2 | correct, during the release of the drug? | 13:53:07 |
| 3 | A.     Very little. | 13:53:23 |
| 4 | Q.     Did your counsel bring to your | 13:53:25 |
| 5 | attention a claim construction order in the | 13:53:27 |
| 6 | litigation involving Depomed and Lupin? | 13:53:30 |
| 7 | A.     No. | 13:53:34 |
| 8 | Q.     So you're not aware that the | 13:53:35 |
| 9 | judge in that case said that some erosion is | 13:53:36 |
| 10 | permitted? | 13:53:39 |
| 11 | A.     I'm not aware of that. | 13:53:41 |
| 12 | Q.     If some erosion were permitted, | 13:53:44 |
| 13 | would that change your opinion? | 13:53:50 |
| 14 | A.     Possibly. | 13:53:51 |
| 15 | Q.     Okay.  Let's take a look at oval, | 13:54:10 |
| 16 | everyone's favorite topic. | 13:54:16 |
| 17 | Now, we can agree, sir, that -- | 13:54:55 |
| 18 | would you turn your attention, please, to | 13:55:12 |
| 19 | page 8 of your expert report where you have | 13:55:16 |
| 20 | the construction set forth. | 13:55:20 |
| 21 | A.     Yes. | 13:55:27 |
| 22 | Q.     That's the definition in the | 13:55:28 |
| 23 | construction of "oval" as set forth in the | 13:55:30 |
| 24 | right-hand column that says, "Any curve that | 13:55:34 |
| 25 | is closed and concave towards the center where | 13:55:36 |

Page 166

```
 1          the geometric form bounded by the closed curve      13:55:42

 2          has a first or second orthogonal axes of            13:55:44

 3          unequal length"?                                    13:55:48

 4               A.     Yes.                                    13:55:49

 5                      The question was, though?               13:55:49

 6               Q.     That's the construction of              13:55:51

 7          "oval"?                                             13:55:51

 8               A.     Yes.                                    13:55:52

 9               Q.     Now, in your section, though, on        13:55:54

10          the '962 patent, you don't apply that              13:55:56

11          construction.                                       13:56:01

12               A.     No.                                     13:56:04

13               Q.     So you don't apply the court's          13:56:11

14          construction of "oval" in the '962 to the          13:56:13

15          Actavis dosage forms, do you?                      13:56:18

16               A.     No.  I honestly had a difficulty       13:56:21

17          understanding the construed claim language.        13:56:24

18               Q.     Did you ask your counsel for            13:56:30

19          clarification?  It's one they stipulated to.      13:56:32

20               A.     I did.                                  13:56:36

21               Q.     And did they explain it to you?        13:56:36

22               A.     I was not given a clear                13:56:42

23          definition, no.                                     13:56:44

24               Q.     So as you look at the two              13:56:46

25          pictures -- you have two pictures of the          13:56:48
```

                                                          Page 167

| | | |
|---|---|---|
| 1 | Actavis dosage form on page 34 of your report? | 13:56:49 |
| 2 | A.     Yes. | 13:56:52 |
| 3 | Q.     On the left-hand side, the | 13:56:54 |
| 4 | picture there, isn't that a curve that is | 13:56:58 |
| 5 | closed and concave towards the center, where | 13:57:01 |
| 6 | the geometric form bounded by the closed curve | 13:57:04 |
| 7 | has a first and second orthogonal axes of | 13:57:07 |
| 8 | unequal length? | 13:57:11 |
| 9 | A.     It's -- as I stated previously, | 13:57:14 |
| 10 | it's difficult for me to understand that claim | 13:57:16 |
| 11 | language. | 13:57:18 |
| 12 | Q.     Okay.  So you didn't put that | 13:57:18 |
| 13 | difficulty in your expert report and bring | 13:57:22 |
| 14 | that to the court's attention, did you? | 13:57:24 |
| 15 | A.     (Shakes head in the negative.) | 13:57:27 |
| 16 | Q.     And you did not apply the court's | 13:57:28 |
| 17 | construction, did you? | 13:57:30 |
| 18 | A.     No. | 13:57:32 |
| 19 | Q.     What you relied upon for "oval" | 13:57:42 |
| 20 | is a specific tableting specification manual; | 13:57:45 |
| 21 | correct? | 13:57:50 |
| 22 | A.     Correct. | 13:57:53 |
| 23 | Q.     And that's all that you relied | 13:58:02 |
| 24 | upon in rendering your opinion set forth on | 13:58:04 |
| 25 | the '962 patent as to whether the Actavis | 13:58:07 |

Page 168

| 1 | dosage forms constitute an oval or not; | 13:58:11 |
| 2 | correct? | 13:58:13 |
| 3 | A.    That's the only exhibit, yes. | 13:58:15 |
| 4 | MR. GAEDE:  Why don't we take a | 13:58:23 |
| 5 | short break.  He needs to change the | 13:58:24 |
| 6 | tape. | 13:58:25 |
| 7 | THE VIDEOGRAPHER:  The time on | 13:58:27 |
| 8 | the video monitor is 1:58 p.m.  We're | 13:58:27 |
| 9 | off the record.  This ends Media 3. | 13:58:32 |
| 10 | (Recess from the record.) | 14:14:15 |
| 11 | THE VIDEOGRAPHER:  We are back on | 14:14:16 |
| 12 | the record.  The time on the video | 14:14:16 |
| 13 | monitor is 2:14 p.m.  This starts | 14:14:18 |
| 14 | Media 4. | 14:14:44 |
| 15 | BY MR. GAEDE: | 14:14:45 |
| 16 | Q.    Sir, I'd like to turn your | 14:14:46 |
| 17 | attention to your opinions on the '927 patent | 14:14:47 |
| 18 | that begin at page 36, 37, 38 of your expert | 14:14:50 |
| 19 | report. | 14:14:54 |
| 20 | A.    Okay. | 14:14:54 |
| 21 | Q.    First of all, in Subsection A of | 14:14:56 |
| 22 | the report at page 37, with respect to the | 14:14:59 |
| 23 | 37 -- with respect to the '927 patent, your | 14:15:04 |
| 24 | opinions are the same as in connection with | 14:15:08 |
| 25 | the '280 patent for the issue of retention in | 14:15:11 |

Page 169

```
 1        the stomach during the fed mode; correct?        14:15:16

 2              A.      Correct.                            14:15:20

 3              Q.      Except that here we -- you and      14:15:21

 4        I can both agree there's no express pyloric       14:15:23

 5        diameter requirement as you say is present in     14:15:28

 6        the '280 patent; correct?                         14:15:30

 7              A.      Not of pyloric -- no reference to   14:15:34

 8        the pylorus.                                      14:15:37

 9              Q.      Is it fair to say that other than  14:15:48

10        your measurements specifically tied to the        14:15:48

11        12.8 millimeters, the statements and opinions     14:15:53

12        you render with respect to the '280, other        14:15:56

13        ones, that applies here to the '927; correct?     14:15:59

14              A.      Yes.  Generally, yes.              14:16:03

15              Q.      And as you note, the court's       14:16:12

16        construction is the same?                         14:16:14

17              A.      Yes.                               14:16:21

18              Q.      Let's turn to -- so your opinions  14:16:21

19        don't in any way differ with respect to the       14:16:23

20        '280; correct?                                    14:16:25

21              A.      Correct.                            14:16:27

22              Q.      With respect to Subsection B of    14:16:31

23        your opinion on the '927 patent, "By diffusion    14:16:33

24        for at least five hours"?                         14:16:37

25              A.      Yes.                               14:16:41
```

```
 1      skill in the art would understand that dosage      14:22:45

 2      forms that the patentee had given up dosage        14:22:47

 3      forms that release drug primarily by a             14:22:50

 4      nondiffusional mechanism."                         14:22:52

 5                  Do you see that?                       14:22:56

 6          A.      Excuse me.  I didn't -- I was at       14:22:57

 7      the beginning of 97 --                             14:22:58

 8          Q.      Sorry.  Go ahead and read it.          14:23:00

 9      That's fine.  Go ahead and read the paragraph      14:23:01

10      if you need to and then we'll ask the              14:23:03

11      question.                                          14:23:04

12                  (Witness peruses the exhibit.)         14:23:05

13          A.      Okay.                                  14:23:21

14          Q.      At the end there, you write, "For      14:23:23

15      these reasons, one of ordinary skill in the        14:23:25

16      art would understand that dosage forms that        14:23:27

17      the patentee had given up dosage forms that        14:23:31

18      release drug primarily by a nondiffusional         14:23:35

19      mechanism."                                        14:23:38

20                  Correct?                               14:23:38

21          A.      Correct.                               14:23:41

22          Q.      And by a non -- "primarily by a        14:23:45

23      nondiffusional mechanism," that's referring        14:23:49

24      to -- in your opinion, to the possibility of       14:23:51

25      erosion becoming the primary mechanism of          14:23:54
```

Page 175

| | | |
|---|---|---|
| 1 | release; correct? | 14:23:58 |
| 2 | A.    Possibly, yes. | 14:23:59 |
| 3 | Q.    For this highly soluble drug? | 14:24:02 |
| 4 | A.    Yes. | 14:24:04 |
| 5 | Q.    But it's correct that you | 14:24:10 |
| 6 | understand the claim requirement by diffusion | 14:24:11 |
| 7 | over at least five hours, that it be primarily | 14:24:14 |
| 8 | by diffusion over at least five hours; | 14:24:16 |
| 9 | correct? | 14:24:18 |
| 10 | (Witness peruses the exhibit.) | 14:24:25 |
| 11 | A.    Yes. | 14:24:32 |
| 12 | Q.    We've talked about Subsection C | 14:24:35 |
| 13 | on Claim 26.  That's the 85 percent. | 14:24:38 |
| 14 | Moving along -- oh, let's go to | 14:24:44 |
| 15 | your opinion on Claim 10, 1 and 10 of the | 14:24:52 |
| 16 | '989. | 14:24:56 |
| 17 | A.    It's number 11; is that right? | 14:25:05 |
| 18 | Q.    I'm sorry, 11, yes. | 14:25:07 |
| 19 | A.    That's okay. | 14:25:09 |
| 20 | Q.    My Roman numerals are starting to | 14:25:09 |
| 21 | blur in the afternoon. | 14:25:13 |
| 22 | Starting at paragraph 102. | 14:25:14 |
| 23 | A.    Okay. | 14:25:16 |
| 24 | Q.    Here you have Claim 1 of the | 14:25:16 |
| 25 | '989? | 14:25:17 |

Page 176

```
1                    THE VIDEOGRAPHER:  The time on          14:50:10

2          the video monitor is 2:50 p.m.  We're             14:50:11

3          off the record.  This ends our                    14:50:14

4          deposition.                                        14:50:16

5                    (TIME NOTED: 2:50 P.M.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Veritext National Deposition & Litigation Services
866 299-5127

```
 1      STATE OF NEW YORK        )

 2                               ss:

 3      COUNTY OF WESTCHESTER   )

 4

 5          I, DAVID R. FRIEND, the witness herein,

 6      having read the foregoing testimony of the

 7      pages of this deposition, do hereby certify it

 8      to be a true and correct transcript, subject

 9      to the correction, if any, shown on the

10      attached page.

11

12

13

14

15               _____

16                    DAVID R. FRIEND

17

18

19

20

21

22      Subscribed and sworn before me

23      this _____ day of_____, 2014.

24      _____

25
```

Page 192

```
 1     STATE OF NEW YORK     )

 2                         ss:

 3     COUNTY OF NEW YORK    )

 4

 5            I, Eileen Mulvenna, Notary Public

 6     within and for the State of New York, do

 7     hereby certify:

 8

 9            That I reported the proceedings in

10     the within entitled matter, and that the

11     within transcript is a true record of said

12     proceedings.

13

14            I further certify that I am not

15     related to any of the parties to the action by

16     blood or marriage, and that I am in no way

17     interested in the outcome of this matter.

18

19            IN WITNESS WHEREOF, I have hereunto

20     set my hand this 29th day of March, 2014.

21

22

23

24     _____

25            Eileen Mulvenna, CSR/RMR

                                   Page 193
```